IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.  Criminal No. 2:13cr152

ISMAEL CUARIO ESTRADA,

Defendant.

## OPINION

This matter is before the Court upon the Government's Motion for Forfeiture of Property ("Motion"), Doc. 48. On May 24, 2013, the Court held a hearing on the Motion. After careful consideration of the parties' briefs and hearing oral argument, the Court **GRANTED** the Government's Motion, and now sets forth its reasoning below.

### I. Factual Background & Procedural History

Defendant was named in a one-count Indictment, charging him with embezzlement of government property, in violation of 18 U.S.C. § 641. Doc. 12. The charges were made in connection with the theft of government money from the safe of the USNS Arctic ("Arctic"), a Military Sealift Command ("MSC") vessel.[1]

The jury trial in this case began on March 11, 2014. The evidence showed that from November 2006 until March 30, 2013, Estrada was the purser aboard the Arctic. As the purser,

---

1 The following facts are derived from testimony at trial, and many were also stated in the Court's April 22, 2014 Order denying Defendant's Motion for Acquittal. Doc. 56.

Estrada had access to the safe aboard the Arctic, and was authorized to hold cash to meet payroll and other ship expenses. The money in the safe was held in bricks and bundles. A brick would contain ten bundles of bills. A brick holding one hundred dollar ("$100") bills would have ten bundles containing one hundred $100 bills; each bundle would have $10,000, and each brick would contain a grand total of $100,000. These bricks were normally sealed until opened. Also found in the safe were loose bundles of money in various denominations. Estrada was subject to random audits and quarterly cash verifications. These reports showed no discrepancies. However, during the last two cash verifications, testimony established that the currency contained in the bricks was not counted.

The amount of money to be held in the safe would vary depending upon the operating status of the Arctic. During a reduced operating status ("ROS"), the purser would be expected to hold less cash then if the ship were fully staffed and traveling outside the continental United States. Testimony established that during the first part of 2013, the Arctic was in ROS and spent most of the time either in New Jersey or Norfolk, Virginia. Despite this, the safe contained an amount of money that would be larger than expected for a ship in ROS, and Estrada added $250,000 to the safe's contents in January.

In March 2013, Estrada became aware that he was going to be transferred to another MSC vessel, the USNS Laramie. Before leaving, he would be expected to sign over the contents of the safe. The acting captain of the Arctic, Captain James Morrissey, instructed Defendant to deposit the contents of the safe with the bank. However, Estrada did not obey this command; instead he received permission from the Port Purser, Nemecio Chavez, to leave the money in the safe. Estrada informed Chavez that he would be returning to the Arctic when no such plans were in place.

On March 28, 2013, Estrada led a cash verification of the safe's contents. One of the officers who conducted the verification with Estrada, Glenda Bell, testified that none of the stacks of $100 bills were counted, and that the sealed bricks of $100 bills were not counted. The next day, Estrada presented the verification report to Captain Morrissey, showing that the safe contained $691,144.00 in cash. Because Estrada was to leave for the Laramie the next day, Morrissey was forced to accept responsibility for the safe's contents. After Estrada left the Arctic, Morrissey testified he never accessed the safe, and that no one else accessed the safe while he was on the ship.

On April 4, 2013, Morrissey was relieved by Captain Thomas Hartley. Captain Hartley assumed responsibility of the safe's contents. He testified that he did not access the safe. A new purser, Jordan Schaeffer, arrived on April 30, 2013. His first task was to conduct an audit of the safe's contents. He performed this audit with two witnesses. When he started counting the bundles of $100 bills, he noticed $1 bills in the stacks. Realizing there was a problem, he contacted the Naval Criminal Investigative Service ("NCIS"). After a full count, they determined that the safe contained only $339,409, for a shortage of $350,608. The bundles of $100 bills had been tampered with; the outside layers of the bundles, both top and bottom, contained $100 bills as they were supposed to, but stacked inside the top and bottom layers were bills of lower denominations substituted for the $100 bills to make it appear that all of the money was present.

NCIS's investigation confirmed that the bricks of $100 bills had been tampered with as described above. NCIS conducted a fingerprint analysis of the currency wrappers contained in the bricks of currency. Two of the bundles had Defendant's fingerprints on them. Testimony established that because they were supposed to be sealed, Defendant's fingerprints should not have been on the wrappers.

The Government also introduced evidence establishing a motive for Defendant to commit the charged offense. Evidence showed that Defendant had fathered illegitimate children, and was sending money to three different families in the Philippines. Evidence also showed that Defendant had made transfers to the Philippines over a long period of time, and that Defendant's salary could not support the amount of transfers he was making.

At the close of the Government's evidence, Defendant moved for acquittal. Defendant argued that the Government's case amount to the equivalent of res ipsa loquitur, and thus did not rise to prove guilt beyond a reasonable doubt. Defendant argued the Government could not prove that no one else accessed the safe during a one-month period between Estrada leaving the Arctic and a new purser, Joseph Schaefer conducted an audit finding the missing money. The Court, however, found that if the jury accepted the Government's evidence, and the legitimate inferences therefrom, then they could determine beyond a reasonable doubt no one else accessed the safe. Accordingly, the Court denied the motion for acquittal.[2]

On March 17, 2014, the jury returned a verdict of guilty. On March 31, 2014, the Government filed the instant Motion. Doc. 48. Defendant filed a Request for Hearing on the Motion on April 12, 2014, Doc. 52, and an Opposition to the Motion on April 14, 2014. Doc. 54. The Government filed its Reply on April 16, 2014. Doc. 53. This matter is now procedurally ready for review.

## II. Standard of Review

Pursuant to Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, the Court must, as soon as practicable after a guilty verdict, determine what property is subject to forfeiture. Fed. R. Crim. P. 32.2(b)(1)(A). "Forfeiture is calculated on the basis of the total proceeds of a crime."

---

[2] The Court also denied Defendant's post-trial Motion for Acquittal. Doc. 56.

United States v. Blackman, 746 F.3d 137, 143 (4th Cir. 2014). The Government must show that a nexus exists between the property to be seized and the offense of conviction. United States v. Bailey, 926 F. Supp. 2d 739, 761 (W.D.N.C. 2013). Where the proceeds of the offense are no longer traceable or available, a personal monetary judgment is appropriate. Id. at 145.

If a party requests a hearing, the Court must hold one. Fed. R. Crim. P. 32.2(b)(1)(B). The Court's ruling may be based on any evidence already in the record or any additional "relevant and reliable" evidence submitted by the parties. The order must be entered far enough in advance for the parties to suggest revisions or modifications at sentencing. Id. 32.2(b)(2)(B). The Fourth Circuit has held that the elements of forfeiture need only be proved by a preponderance of the evidence. United States v. Cherry, 330 F.3d 658, 669 (4th Cir. 2003); United States v. Tanner, 61 F.3d 231, 233–34 (4th Cir. 1995). The Government is entitled to rely on circumstantial evidence in meeting its burden. United States v. Patel, 949 F. Supp. 2d 642, 648 (W.D. Va. 2013) (citing United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010)).

### III. Analysis

Forfeiture is mandatory in this case. Blackman, 746 F.3d at 143. The Government asked the Court to enter a forfeiture order in the amount of $350,608, as the evidence at trial established by at least a preponderance of the evidence that Defendant embezzled that amount. Doc. 48 at 5. Defendant argued that the Government did not prove the amount subject to forfeiture.[3] Doc. 54 at 1.

The evidence in this case is sufficient to establish by a preponderance of the evidence that the amount of the loss was $350,608. The Government presented testimony that Defendant was

---

3 The Defendant also argues that the evidence at trial was not sufficient to sustain the guilty verdict, but the Court has already denied Defendant's Motion for Acquittal. Doc. 56.

the only one who had access to the safe. In reaching its verdict, the jury accepted the records which showed the amount that was supposed to be in the safe. Schaeffer's audit established that the reported amount was not in the safe. Additionally, how Estrada conducted the audit to reach the reported amount was part of the evidence against him, because the bricks in the safe were not counted. Furthermore, the evidence at trial showed that Defendant was carrying a larger amount of money in the safe then he should have been.

Moreover, the Government introduced evidence showing that Defendant had a motive for the instant offense. Evidence also showed that he had fathered illegitimate children, and was supporting three families over an extended period of time. Additionally, Defendant was the one who had the motive to conceal his crime by tampering with the bricks and substituting lower denominations inside what were supposed to be sealed bricks. Thus, the evidence is sufficient to support the entry of a forfeiture order.

## IV. Conclusion

For the reasons explained above, the Government's Motion, Doc. 48, is **GRANTED**.

The Clerk is **REQUESTED** to mail a copy of this Opinion to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
*SENIOR UNITED STATES DISTRICT JUDGE*

Norfolk, Virginia
Date: May 29, 2014